## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

COBB COUNTY, GEORGIA,

Plaintiff-Counterclaim Defendant,

v.

TYLER TECHNOLOGIES, INC.,

Defendant-Counterclaim Plaintiff.

Case No. 1:24-cv-00045-LMM

## TYLER TECHNOLOGIES, INC.'S
## ANSWER AND COUNTERCLAIMS

Defendant Tyler Technologies, Inc. ("Tyler Tech") submits its Answer and Counterclaims to the Amended Complaint of Plaintiff Cobb County, Georgia ("County"), as follows:

## ANSWER

## PARTIES, JURISDICTION, AND VENUE[1]

1. Admitted.

2. Admitted.

3. Admitted.

---

[1] For clarity, Tyler Tech repeats the section headings used in the Amended Complaint. To the extent such headings may be construed as independent factual allegations, they are denied.

4.   Admitted.

## FACTUAL BACKGROUND

5.     Admitted that on July 13, 2018, Cobb County issued Request for Proposal 18-6380. Further admitted that the request sought "an off-the-shelf, customizable product" for the Cobb County Business License Division. The remaining allegations of Paragraph 5 are denied.

6.     Admitted that on September 13, 2018, Tyler Tech submitted a bid in response to the Request for Proposal. The remaining allegations of Paragraph 6 are denied.

7.     Admitted that on or about July 1, 2020, the County signed a License and Services Agreement with Tyler Tech. Further admitted that the total amount of the contract, as amended, was $3,923,854.00. The remaining allegations of Paragraph 7 are denied.

8.     Admitted the Contract defines a "Defect" as follows: "'Defect' means a failure of the Tyler Software to substantially conform to the functional descriptions set forth in our written proposal to you, or their functional equivalent. Future functionality may be updated, modified, or otherwise enhanced through our maintenance and support services, and the governing functional descriptions for such future functionality will be set forth in our then-current Documentation." The remaining allegations of Paragraph 8 are denied.

9.      Admitted.

10.     Admitted.

11.     Admitted that Section 1.3 of Exhibit E to the Contract states: "The Project Timeline establishes a start and end date for each Phase of the Project and will be developed during State 1 Initiate & Plan and revised as mutually agreed to if needed." Further admitted that the parties agreed to an initial Project Timeline in June 2021 and agreed to modify this timeline in March 2022. Denied to the extent it is implied that the only mutually agreed modifications to the Project Timeline occurred in March 2022.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Admitted that on November 7, 2022, the County sent Tyler Tech a "Notice of Breach of License and Services Agreement and Amendment No. 1." The remaining allegations of Paragraph 18 are denied.

19.     Admitted that the November 7 Notice of Breach alleged that Tyler Content Manager Enterprise Edition, Socrata Citizen Connect, and EnerGov Citizen

Self Service "had not been provided." Further admitted that the Notice of Breach alleged that "Tyler's Software is defective because it lacks the promised and contracted for integrations" identified as IasWorld, MobileEyes, CGI Financials, License Review Board, Mavro and OnBase, and Project View and BidExpress. Denied that any promised software or integrations were missing or not provided. The remaining allegations of Paragraph 19 are denied.

20.     Denied.

21.     Denied.

## COUNT I – BREACH OF CONTRACT

22.     Tyler Tech incorporates by reference its responses set forth in Paragraphs 5 through 21.

23.     Denied.

24.     Denied.

25.     Regarding the unnumbered paragraph beginning "WHEREFORE" and subparts 1–4 of that paragraph, Tyler Tech denies that the County is entitled to any judgment or relief.

## GENERAL DENIAL

Any allegation contained in the Amended Complaint that is not expressly admitted in this Answer is denied.

## DEFENSES

Without assuming any burden that otherwise lies with the County, Tyler Tech asserts the following affirmative defenses:

### First Defense

The County's claim is barred in whole or in part by the doctrine of waiver.

### Second Defense

The County's claim is barred in whole or in part by the doctrine of estoppel.

### Third Defense

The County's claim is barred in whole or in part by the doctrine of laches.

### Fourth Defense

The County's claim is barred in whole or in part by payment or offset.

### Fifth Defense

The County's claim is barred in whole or in part by the doctrine of accord and satisfaction.

### Sixth Defense

The County's claim is barred in whole or in part by the doctrine of unclean hands.

### Seventh Defense

The County's claim is barred in whole or in part because the County failed to satisfy the Contract's dispute resolution requirement.

**<u>Reservation of Right to Assert Additional Defenses</u>**

Tyler Tech reserves the right to amend this pleading to assert additional defenses.

**<u>COUNTERCLAIMS</u>**

1.      In support of its counterclaims, Tyler Tech alleges as follows:

**<u>PARTIES</u>**

2.      Cobb County ("County") is a political subdivision of the State of Georgia.

3.      Tyler Tech is a Delaware corporation with its principal place of business in Texas.

**<u>JURISDICTION AND VENUE</u>**

4.      The Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. § 1367(a) because they are so related to the County's claim that they form part of the same case of controversy under Article III of the United States Constitution.

5.      The Court further has subject matter jurisdiction over these counterclaims under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000.

6.      The Court has personal jurisdiction over the County because the County is a political subdivision of the State of Georgia and located in this district.

7.     Venue is proper under 28 U.S.C. § 1391(b) because this is the judicial district where a substantial part of the vents or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

### Tyler Technologies

8.     Tyler Tech is the leading vendor of technology solutions for the public sector in the United States.

9.     Among its many offerings, Tyler Tech licenses software suites to manage the civic services that municipalities operate, such as licensing and regulatory review, permitting, inspections, and parks/recreation activities.

10.    The family of products that make up Tyler Tech's civic services offerings are often referred to as "EnerGov."

11.    When working with municipalities, Tyler Tech develops and licenses technology; implements that technology; and, once it is operating in live production, provides annual maintenance and support services.

### Tyler Tech Contracts with the County

12.    In 2018, the County issued Request for Proposal 18-6380 ("RFP") seeking a business license software system for the Cobb County Business License Division.

13.     Tyler Tech submitted a formal response to the RFP on September 13, 2018 ("Tyler Tech Proposal.").

14.     After the County selected the Tyler Tech Proposal, Tyler Tech and the County began negotiating a contract to govern the contemplated project.

15.     In July 2020, the parties executed a License and Services Agreement for the licensing, implementation, and maintenance of a business licensing solution for the County (the "Contract").

16.     In June 2021, the parties executed Amendment No. 1 to the License and Services Agreement to add community development products and services to the Contract.

17.     The Business Licensing and Community Development implementations proceeded as separate projects with some shared resources.

## Relevant Contract Terms

18.     Section C(1) of the Contract provides that Tyler Tech will "provide . . . the various implementation-related services itemized in the Investment Summary and described in the Statement of Work."

19.     The Statement of Work, attached as Exhibit E to the Contract, outlines how each project would be implemented, as broken down into six work stages: (1) Stage 1, Initiate and Plan: establish project foundation, including team assignments, management plans, system infrastructure requirements, and project scheduling; (2)

Stage 2, Assess and Define: gather information about current County business processes and translate the material into future business processes using the Tyler Tech Software; (3) Stage 3, Build and Validate: configure the Tyler Tech Software based on the business processes agreed upon in Stage 2, and convert legacy County data into the Tyler platform; (4) Stage 4, Final Testing and Training: prepare for cutover to live production and verify readiness for day-to-day business processing; (5) Stage 5, Production Cutover: begin day-to-day processing using Tyler Tech Software (also referred to as "go live") and transition from Tyler Tech implementation to Tyler Tech support; (6) Stage 6, Project Closure: identify any outstanding project activities and develop plan to close them out.

20.    Each Stage itemizes the required contributions of both the County and Tyler Tech project teams, and each Stage ends with a "control point" at which the County acknowledges enumerated work achieved in that Stage prior to the parties progressing to the next Stage.

21.    Section 1.3 of the Statement of Work provides that "[t]he Project Timeline establishes a start and end date for each Phase of the Project and will be developed during State 1 Initiate & Plan and revised as mutually agreed to, if needed."

22.     Relevant considerations for the Project Timeline are identified as "*resource availability, business goals, size and complexity of the Project, and task duration requirements.*"

23.     Section 1.8 of the Statement of Work enumerates specific "Project Assumptions" related to the Project, Resources, and Scheduling. Such assumptions include: (1) the County would "allocate internal resources if needed;" (2) the County would make "timely project related decisions in order to achieve scheduled due dates on tasks and prepare for subsequent training sessions;" and (3) the County would "respond to information requests in a comprehensive and timely manner, in accordance with the Project Plan."

24.     Section 1.8 advises that "[d]ecisions left unmade may affect the schedule, as each analysis and implementation session builds on the decisions made in prior sessions."

**The County's Relevant Obligations Under the Contract**

25.     In Section C(6) of the Contract, the County "acknowledge[d] that the implementation of the Tyler Software is a cooperative process requiring the time and resources of your personnel."

26.     The County further "agree[d] to use all reasonable efforts to cooperate with and assist Tyler Tech as may be reasonably required to meet the agreed upon project deadlines and other milestones for implementation."

27.     In Section I(3) of the Contract, the County agreed: (1) "to provide [Tyler Tech] with written notice within thirty (30) days of becoming aware of a dispute;" and (2) "cooperate with [Tyler Tech] in trying to reasonably resolve all disputes, including, if requested by either party, appointing a senior representative to meet and engage in good faith negotiations with our appointed senior representative."

28.     Under Section C(2) of the Contract, the County agreed to pay Tyler Tech "the professional services fees in the amounts set forth in the Investment Summary . . . in accordance with [Tyler Tech's] Invoicing and Payment Policy."

29.     Section F(2) of the Contract governs invoice disputes and provides:

> Invoice Disputes. If you believe any delivered software or service does not conform to the warranties in this Agreement, you will provide us with written notice within forty-five (45) days of your receipt of the applicable invoice. The written notice must contain reasonable detail of the issues you contend are in dispute so that we can confirm the issue and respond to your notice with either a justification of the invoice, an adjustment to the invoice, or a proposal addressing the issues presented in your notice. We will work with you as may be necessary to develop an action plan that outlines reasonable steps to be taken by each of us to resolve any Issues presented in your notice. You may withhold payment of the amount(s) actually in dispute, and only those amounts, until we complete the action items outlined in the plan. If we are unable to complete the action items outlined in the action plan because of your failure to complete the items agreed to be done by you, then you will remit full payment of the invoice. We reserve the right to suspend delivery of all services, including maintenance and support services, if

you fail to pay an invoice not disputed as described above
within fifteen (15) days of notice of our intent to do so.

30.     Section G(1) of the Contract provides: "In the event of termination, you

will pay us for all undisputed fees and expenses related to the software, products,

and/or services you have received, or we have incurred or delivered, prior to the

effective date of termination. Disputed fees and expenses in all terminations other

than your termination for cause must have been submitted as invoice disputes in

accordance with Section F(2)."

### Tyler Tech Performs Under the Contract While the County Does Not

31.     In accordance with the Contract, the parties baselined a project schedule

during Stage 1 of the Business License implementation.

32.     During each of the parties' regular project status meetings, the project

teams discussed, among other items, the current project activities and completed

project activities, the progress of the project by state, project risks, and project

schedules.

33.     The parties also agreed to a project schedule during Stage 1 of the

Community Development implementation.

34.     The County signed off on Stage 1 for both the Business Licensing and

Community Development implementations.

35.     In accordance with Section 1.14.6 of the Statement of Work, the sign-

offs for Stage 1 meant that the County accepted the project schedules the parties

developed during Stage 1 and the current state/future state analysis performed during Stage 2.

36.    Stage 2 for the Business Licensing implementation was completed in July 2021.

37.    After completion of Stage 2, Tyler Tech's ability to progress on the Business Licensing implementation was repeatedly hampered by the County.

38.    The County had little to no availability in the fourth quarter of each year, forcing Tyler Tech to work independently of the County.

39.    This unavailability delayed the County's completion of a required Stage 2 Questionnaire.

40.    Additionally, in January 2022, the County began raising vague concerns that elements of functionality were missing in the Business Licensing implementation.

41.    In response to these generalized concerns, Tyler Tech requested that the County provide specific concerns of functionality.

42.    At approximately the same time, the County experienced a service account issue caused by security reconfigurations the County made without advising Tyler Tech.

43.    To assist the County with this service issue, Tyler Tech made resources available to the County at no additional cost to the County.

44.     Upon information and belief, it was a recommendation from a Tyler Tech employee that fixed the County's service account issue.

45.     On April 25, 2022, the County, in response to Tyler's request that the County provide specific and not vague concerns, provided Tyler with a "showstopper" list of allegedly missing functionalities for the Business Licensing implementation.

46.     Tyler Tech worked diligently to address the "showstopper" concerns by engaging in significant verbal and written exchanges with the County, scheduling those exchanges to accommodate the availability of the County's primary subject-matter expert on the Business Licensing implementation, and organizing four demonstrations in June and August of 2022.

47.     By the summer of 2022, Tyler Tech had worked with the County to reduce the list of outstanding issues to five.

48.     By September 8, 2022, Tyler Tech had responded to the outstanding five items, providing existing solutions to four of the items and a 2023 roadmap for the fifth (at no cost to the County).

49.     The County never contested any of Tyler Tech's proffered solutions with respect to the identified items for the Business Licensing implementation.

50.     The County never identified any "showstopper" items or other issues for the Community Development implementation.

51.   As of September 2022, the Business Licensing and Community Development implementations were each on budget and on schedule.

52.   The Business Licensing implementation was in Stage 3 and was proceeding consistent with County availability, input, and direction.

53.   The County approved all Assess & Define documentation for Stage 2 of the Community Development implementation, and Tyler Tech had begun Stage 3 for the Community Development implementation.

54.   Also at this time, the County had failed to pay $405,634 in invoices due under the Contract.

## The County Improperly Repudiates The Contract

55.   In September 2022, the County informed Tyler Tech that it would no longer engage with Tyler Tech on either the Business Licensing or Community Development implementations.

56.   On September 21, 2022, the County sent Tyler Tech a letter purporting to "invalidate[] the License and Services Agreement dated July 1, 2020 . . . and Amendment No. 1" ("September 21 Letter").

57.   The stated basis for this invalidation, and the County's corresponding argument that none of the Contract's terms were binding, was the County's interpretation of a Tyler Tech response to a County RFP question about "Testing and Acceptance."

58.     On October 11, 2022, Tyler Tech responded to the September 21 Letter ("October 11 Letter").

59.     In the October 11 Letter, Tyler Tech explained that the Contract was valid under Georgia law, basic contract doctrines, and the clear terms of the Contract itself, which was fully negotiated by the parties and did not incorporate by reference the terms of the RFP or the Tyler Tech Proposal.

60.     The October 11 Letter further noted that the County failed to identify any breaches in its September 21 Letter and that the County had caused delays to the Project Timeline through the service issue and delays in preparing and responding to the "showstopper" list.

61.     The October 11 Letter proposed a high-level outline for completing the project and asked that the "County confirm its commitment to move forward no later than October 17, 2022."

62.     The October 11 Letter further stated, "We ask that the County confirm its commitment to move forward no later than October 17, 2022. If the County refuses to re-engage, we would consider that to be a request for a termination for convenience. Given that the County has not properly disputed any previously paid fees and there is no material breach, there would be no refund. Tyler would also seek payment on the outstanding and undisputed invoices totaling $448,272.60. See Contract at Section I, paragraph 2."

63.     The County did not respond by October 17, 2022.

64.     Instead, on November 7, 2022, the County sent Tyler Tech a "Notice of Breach of License and Services Agreement and Amendment No. 1" ("November 7 Letter").

65.     The November 7 Letter alleged that Tyler Tech had "failed to deliver and implement its software on schedule and in accordance with specifications contained in the Tyler Written Proposal and the Agreement."

66.     The November 7 Letter further stated:  "With all due respect to Tyler's offer to recommit to a new Project Timeline, to our detriment, Cobb County has wasted too many hours and too many dollars over the past 28 months relying on Tyler's commitment to successfully complete this project and 'ensure the highest level of client satisfaction.'"

67.     On November 16, 2022, Tyler Tech responded to the County, stating that the project was on schedule, that any delays were caused by the County, and that "[f]undamentally, the Tyler Software works as designed and meets the County's written requirements."

68.     While Tyler Tech had previously presented its claims to the County in the October 11 Letter, on June 23, 2023, Tyler Tech sent to the County Manager a formal presentation of its claims for $405,634.

## COUNT I – BREACH OF CONTRACT

69.     Tyler Tech incorporates the allegations in paragraphs 8 through 68.

70.     The Contract is a binding and enforceable agreement between the Parties.

71.     At the time the County stopped engaging on the implementations, Tyler Tech had fulfilled all its obligations under the Contract.

72.     Under the Contract, the County was required to pay invoices submitted by Tyler Tech.

73.     The County has failed to pay $405,634 due under the Contract.

74.     The County's failure to pay the amounts due has damaged Tyler Tech.

## COUNT II – BREACH OF CONTRACT

75.      Tyler Tech incorporates the allegations in paragraphs 8 through 68.

76.     The Contract is a binding and enforceable agreement between the Parties.

77.     At the time the County stopped engaging on the projects, Tyler Tech had fulfilled all its obligations under the Contract.

78.     Under the Contract, the County was required to use all reasonable efforts to cooperate with and assist Tyler Tech as was reasonably required to meet the agreed-upon project deadlines and other milestones for implementation.

79.     The County breached this provision by failing to take any steps to advance the Business Licensing implementation during the fourth quarter of the year, causing a service account issue, and insisting on the resolution of a "showstopper" list while not engaging in a timely or good-faith resolution of that list.

80.     The County's failure to cooperate with and assist Tyler Tech with the implementation of the Contract, damaged Tyler Tech by causing unnecessary delays to the Business Licensing implementation.

## COUNT III – BREACH OF CONTRACT

81.     Tyler Tech incorporates the allegations in paragraphs 8 through 68.

82.     The Contract is a binding and enforceable agreement between the Parties.

83.     At the time the County stopped engaging on the projects, Tyler Tech had fulfilled all its obligations under the Contract.

84.     Under the Contract, the County was required to cooperate with Tyler Tech in trying to reasonably resolve all disputes.

85.     The County breached this provision by purporting to terminate the Contract in September 2022 and then refusing Tyler Tech's good-faith efforts to resolve the County's unsupported complaints.

86.    The County's breach damaged Tyler Tech by wrongfully causing the termination of the Contract.

## COUNT IV – SETOFF

87.    Tyler Tech incorporates the allegations in paragraphs 8 through 68.

88.    While Tyler Tech denies that it owes any liability with respect to the affirmative claim in this case, any liability from such claim must be set off by the amounts of these counterclaims.

## COUNT V – ATTORNEYS' FEES AND EXPENSES

89.    Tyler Tech incorporates the allegations in paragraphs 8 through 68.

90.    Tyler Tech repeatedly sought to have the County honor its contractual obligations.

91.    The County has acted in bad faith, been stubbornly litigious, or caused Tyler Tech unnecessary trouble and expense.

92.    Tyler Tech is entitled to attorneys' fees and expenses under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Tyler Tech respectfully requests that this Court enter judgment against the County as follows:

a)  Dismissing the Complaint against Tyler Tech.

b)  Entering judgment in favor of Tyler Tech on its Counterclaims.

c)  Awarding Tyler Tech damages in an amount to be determined at trial, but

    not less than $405,634, plus interest, costs, and attorney's fees; and

d)  Granting Tyler Tech such other relief as this Court deems just and proper.

Respectfully submitted, this 1st day of March, 2024.

                         KHAYAT LAW FIRM

                         */s/ Brian D. Spielman*
                         Robert C. Khayat, Jr.
                         Georgia Bar No. 416981
                         Brian D. Spielman
                         Georgia Bar No. 596026

                         KHAYAT LAW FIRM
                         75 14th Street, N.E., Suite 2750
                         Atlanta, GA 30309
                         Telephone: (404) 978-2750
                         Facsimile: (404) 978-2901
                         RKhayat@khayatlawfirm.com
                         BSpielman@khayatlawfirm.com

                         *Counsel for Tyler Technologies, Inc.*

## <u>LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

I certify that the foregoing document has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt. font.


*/s/ Brian D. Spielman*
Brian Spielman
Georgia Bar No. 596026

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was electronically filed this day with the

Clerk of the Court through the CM/ECF system, which will send notice of electronic

filing to counsel of record.

This 1st day of March, 2024.

/s/ Brian D. Spielman
Brian D. Spielman
Georgia Bar No. 596026